## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **SPENCER C. SHIELDS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 05-2073-CM** |
| | ) | |
| **U.S. BANK NATIONAL ASSOCIATION** | ) | |
| **ND, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Spencer C. Shields brings this action against defendants U.S. Bank National Association ND, f/k/a First Bank of South Dakota, U.S. Bancorp Insurance Services, Inc., and U.S. Bancorp, f/k/a First Bank Systems, Inc. (collectively "U.S. Bank") for damages allegedly arising out of a home equity line of credit ("HELOC"), a checking account, and a reserve line of credit on the checking account (the "Reserve Line"). Plaintiff claims that U.S. Bank failed to properly credit a payment on his HELOC, and then began using an allegedly unauthorized Reserve Line to cover the missed payment and subsequent fees and charges. U.S. Bank reported that plaintiff was delinquent on the HELOC and in arrears on his checking account to credit reporting agencies and other lenders. Plaintiff claims that U.S. Bank's reports were improper, unwarranted, and defamatory.

The case is before the court on U.S. Bank's Motion for Summary Judgment (Doc. 135) and Plaintiff's Motion for Partial Summary Judgment on Liability against Defendant U.S. Bank (Doc. 132). For the following reasons, the court grants U.S. Bank's motion and denies plaintiff's motion.

## I. FACTUAL BACKGROUND[1]

Plaintiff and his now-ex-wife opened a $50,000 HELOC with U.S. Bank in the spring of 1999.  At the same time, they opened a U.S. Bank checking account that would automatically debit the HELOC payments to receive a lower rate on the HELOC.  The checking account had a $1,000 Reserve Line attached to it, although plaintiff did not give written authorization for the Reserve Line and claims that he did not know it existed until December 2002.  The Reserve Line provided overdraft protection, and was funded by a loan to the consumer when activated.

Each month, plaintiff mailed a check for $484.83 drawn on another checking account—his UMB checking account—for deposit in his U.S. Bank checking account.  Plaintiff's HELOC account would then debit plaintiff's U.S. Bank checking account on the day plaintiff's HELOC payment was due.  The only thing plaintiff used the U.S. Bank checking account for was to deposit the $484.83 monthly HELOC payment that U.S. Bank would then automatically transfer to the HELOC account on the payment due date.

In March 2000, U.S. Bank did not deposit a $484.83 check in plaintiff's checking account, although circumstantial evidence exists that plaintiff mailed the check, which was UMB check number 2462.  Because plaintiff's U.S. Bank checking account had a balance of $0.80 without the check, the Reserve Line advanced $600 into plaintiff's U.S. Bank checking account to cover the HELOC payment without plaintiff's knowledge or authorization.  After March 2000, plaintiff continued making monthly deposits of $484.83 into the checking account, but never deposited additional funds to repay the $600 debt from the Reserve Line advancement.  U.S. Bank therefore

---

[1]  Because the court considers U.S. Bank's motion first, the court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed. R. Civ. P. 56.  The court has included only those facts which are relevant, material, and properly supported by the record.

automatically applied funds monthly from the checking account to make minimum payments of $25 and related finance charges on the Reserve Line.  UMB check number 2462 has never cleared.

On August 23, 2000, plaintiff's checking account balance was $475.80, which was not enough to cover the monthly HELOC payment.  So on August 30, the Reserve Line advanced $200 into the checking account to make the payment.  Again, although plaintiff continued depositing $484.83 into the checking account monthly, he never deposited additional funds to retire the new $200 debt from the Reserve Line advancement.  U.S. Bank continued automatically applying funds monthly from the checking account to cover the $25 minimum payments and finance charges on the Reserve Line.

On December 26, 2001, plaintiff's checking account balance was $475.80.  On December 31, 2001, the Reserve Line again advanced $200 to cover plaintiff's HELOC payment.  Plaintiff never deposited funds to retire this new Reserve Line debt, and U.S. Bank disabled plaintiff's Reserve Line in June 2002.

On May 8, 2002, plaintiff filed a petition for Chapter 7 bankruptcy, seeking discharge of nearly $100,000 in credit card debt.  He did not seek to discharge his U.S. Bank debts or list any potential legal claims against U.S. Bank as an asset.  His debts were discharged on September 13, 2002.

Defendant made his October 2002 deposit of $484.83 one day late (on November 1), which meant that the money was not there for the October HELOC automatic debit.  Because the Reserve Line was disabled, U.S. Bank did not cover the October HELOC payment.  Plaintiff then deposited another $484.83 in the checking account on November 29, 2002 to cover the November HELOC debit, but U.S. Bank applied the November HELOC payment to the payment originally due in

October.  On December 17, 2002, plaintiff withdrew the "extra" $484.83 from his checking account and made a direct cash payment toward the HELOC to get his HELOC payments up-to-date.  By U.S. Bank's records, plaintiff's HELOC payments were late in October and November 2002. Plaintiff made another late payment HELOC payment because of circumstances out of his control in January 2003.

Plaintiff then delivered a payment to U.S. Bank on February 28, 2003 for his February HELOC payment, but U.S. Bank applied the payment to the outstanding balance on plaintiff's Reserve Line instead of plaintiff's HELOC account.

Plaintiff sent four letters—dated January 13, 2003, January 14, 2003, February 10, 2003, and March 12, 2003—to U.S. Bank.  Plaintiff spoke on the phone with David Jass at U.S. Bank on February 4, 2003, and requested that he discontinue the automatic withdrawal from plaintiff's checking account.

Between October 30, 2002 and October 4, 2003, plaintiff received at least twenty-one notices that his checking account was overdrawn and/or delinquent.  Between June 2002 and January 2005, plaintiff received at least sixty-two collection calls relating to plaintiff's checking account.  Between May 1999 and the date this action was filed, plaintiff received only one notice that his HELOC account was delinquent, although plaintiff assumed that all references to his Reserve Line were actually references to the HELOC.

The outstanding balance and available limit for the Reserve Line is identified on every bank statement plaintiff received for his U.S. Bank checking account, although plaintiff understood the "Reserve Line" to mean the HELOC.  Plaintiff never reconciled his U.S. Bank checking account or his HELOC account records.  Plaintiff failed to notify U.S. Bank that he had not received bank

statements for either the checking account or the HELOC account until February 2003. Plaintiff admits that he received bank statements for his U.S. Bank checking account for October 2000; January, February, March, June, and October 2001; April–May and July–December 2002; and January–October 2003. He admits receiving bank statements for his HELOC account for January—March, June–July, and November 2001; April–December 2002; and January–September 2003.

    In August and September of 2004, plaintiff attempted to refinance two mortgages. Although U.S. Bank gave adverse credit references, First National Bank approved plaintiff's loan request. Plaintiff then rescinded the loan on October 4, 2004. At the time, plaintiff intended to purchase another home, for which he sought 100% financing. NovaStar Mortgage declined plaintiff's request for 100% financing based on U.S. Bank's report that plaintiff was late with his payments. NovaStar stated that it was willing to finance a 90% loan with 10% down. Plaintiff did not take the offer, and refinanced his first and second mortgages on his current home in October 2005. During the time plaintiff was trying to obtain financing, U.S. Bank informed several lenders about plaintiff's account payment history at the request of the lenders. Plaintiff filed the instant action on January 26, 2005.

## II. STANDARDS FOR JUDGMENT

    Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  SUMMARY OF PLAINTIFF'S CLAIMS

Plaintiff's specific claims against U.S. Bank are as follows:

A.    Fair Credit Reporting Act ("FCRA")—In violation of the FCRA, U.S. Bank inaccurately
reported plaintiff's payment history to consumer reporting agencies.[2]

B.    Kansas Consumer Protection Act ("KCPA")—In violation of the KCPA, U.S. Bank (1)
concealed that it intended to open a credit account (the Reserve Line) in plaintiff's name; (2)
failed to give plaintiff reasonable notice that the Reserve Line was in default; (3) charged
plaintiff late fees and interest on an unauthorized overdraft credit account; and (4) withdrew
funds from plaintiff's checking account without authorization.

C.    Truth in Lending Act ("TILA")—In violation of TILA, U.S. Bank failed to make certain
disclosures to plaintiff before opening a line of credit.

D.    Breach of Contract—U.S. Bank breached the HELOC contract by: (1) failing to
acknowledge receipt of plaintiff's letters within 30 days or explain why the statements were
correct within 90 days ("Breach 1"); (2) continuing collection activities on the HELOC
account and the checking account after plaintiff disputed the amounts ("Breach 2"); (3)
withdrawing amounts from plaintiff's accounts after plaintiff disputed the amounts ("Breach
3"); (4) reporting plaintiff's accounts as past-due after receiving plaintiff's dispute letters
("Breach 4"); (5) failing to report that plaintiff disputed the amounts allegedly past-due
("Breach 5"); (6) failing to tell plaintiff the name of anyone to whom U.S. Bank reported
plaintiff's payment history ("Breach 6"); (7) making plaintiff's HELOC payments from the

---

[2]  Plaintiff concedes that the court must dismiss his Fair Credit Reporting Act ("FCRA")
claim because 15 U.S.C. § 1681s-2(s) does not provide him with a private right of action. *See*
*Aklagi v. Nationscredit Fin.*, 196 F. Supp. 2d 1186, 1192-94 (D. Kan. 2002).  The court therefore
dismisses plaintiff's FCRA claim.

Reserve Line instead of overdrawing his account ("Breach 7"); (8) withdrawing finance

charges and minimum payments on the Reserve Line from plaintiff's checking account

("Breach 8"); and (9) opening the Reserve Line without plaintiff's authorization ("Breach

9").

E.     Negligence—U.S. Bank acted negligently in (1) losing plaintiff's March 2000 deposit

("Negligence Claim 1"); (2) not closing the checking account on February 4, 2003

("Negligence Claim 2"); (3) failing to mail plaintiff monthly billing statements on plaintiff's

HELOC after committing to do so on February 4, 2003 ("Negligence Claim 3"); (4) failing to

apply all tendered loan payments to the HELOC after advising plaintiff that the checking

account was being closed on February 4, 2003 ("Negligence Claim 4"); and (5) opening and

using the Reserve Line without plaintiff's authorization ("Negligence Claim 5").

F.     Defamation—U.S. Bank defamed plaintiff when it communicated false credit information to

consumer reporting agencies and to lenders.[3]

## IV. DISCUSSION

### A. Threshold Issue: Standing

The court first considers the threshold issue of whether plaintiff has standing to bring any of

the claims in this case.  For the following reasons, the court finds that plaintiff lacks standing to

bring most of his claims.

In May 2002, plaintiff sought discharge of nearly $100,000 in bankruptcy.  Claims that

accrued prior to plaintiff's bankruptcy belong to the bankruptcy trustee, not plaintiff.  *See* 11 U.S.C.

§ 541(a)(1) (broadly defining property of the estate as all "legal or equitable interests of the debtor in

---

[3] Plaintiff also claimed that U.S. Bank improperly reported information to his ex-wife, but
has since withdrawn that claim.

property as of the commencement of the case"); *Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006).  Moreover, plaintiff failed to disclose his potential claims against U.S. Bank.  Plaintiff may not pursue a claim now that he failed to disclose to the bankruptcy court.  *See Clark v. Trailiner Corp.*, No. 00-5020, 2000 WL 1694299, at *1–*2 (10th Cir. Nov. 13, 2000) (observing that a debtor who fails to disclose assets, including contingent claims, "loses all rights to enforce any unscheduled legal claim in his own name").  The court must therefore determine which of plaintiff's claims were pre-petition claims, and which were post-petition claims.

The Tenth Circuit uses the "conduct" theory to classify legal claims as pre- or post-petition. *In re Parker*, 313 F.3d 1267, 1269 (10th Cir. 2002).[4]  The conduct theory defines the date of the legal claim by the date of the conduct that gave rise to the claim, not by the accrual date of the claim under state law.  *Id.*  A legal claim, or "property," belongs to the bankruptcy estate if it is "sufficiently rooted" in pre-petition conduct.  *Segal v. Rochelle*, 382 U.S. 375, 380 (1966); *see also Paul v. USIS Commercial Servs., Inc.*, No. 04-RB-1384 (CBS), 2006 WL 2385202, at *1 (D. Colo. Aug. 17, 2006).  "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed."  *Segal*, 382 U.S. at 379.  "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative is within the reach of § 541."  *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

Here, U.S. Bank opened the Reserve Line in May 1999.  The Reserve Line was used in

---

[4]  Although *In re Parker* considered the definition of "claim," (meaning a claim *against* the debtor) and not "interest in property," (meaning a claim *of* the debtor), the court finds the reasoning applicable to this case.  *Cf. In re Howe*, 232 B.R. 534, 537 (1st Cir. B.A.P. 1999) ("Under § 541(a)(1) of the Bankruptcy Code, property of the estate includes choses in action, even if contingent and unliquidated and thus not subject to attachment under state law.").

March 2000, August 2000, and December 2001, all before plaintiff filed for bankruptcy. U.S. Bank began withdrawing funds from plaintiff's checking account and charging late fees and interest each time the Reserve Line was used. The following claims are therefore dismissed because they deal with establishment of the Reserve Line and use of the Reserve Line, and they therefore belong to the trustee: (1) the KCPA claims, which deal with establishment and use of the Reserve Line and the resulting unauthorized withdrawals from plaintiff's checking account; (2) the TILA claims, which deal with U.S. Bank's failure to make disclosures to plaintiff before opening the Reserve Line; (3) breach of contract claims 7, 8, and 9, which center on the establishment and use of the Reserve Line; and (4) negligence claims 1 (losing plaintiff's March 2000 deposit) and 5 (opening and using the Reserve Line).[5]

The court also finds that most of plaintiff's other claims are "sufficiently rooted" in pre-petition conduct, such that plaintiff lacks standing to bring the claims. Certainly, most of his claims are derivative of pre-petition conduct. All of the claims involving plaintiff's checking account and Reserve Line are traceable to U.S. Bank's actions in opening the Reserve Line and using the Reserve Line; these actions began a chain of events which ended with U.S. Bank reporting plaintiff's accounts as delinquent. Without the first use of the Reserve Line in March 2000, the Reserve Line likely would have never been activated, at least until possibly October 2002. If the Reserve Line had never been activated, U.S. Bank would not have had occasion to report that plaintiff's checking account was overdrawn and/or delinquent.

The court has found little relevant case law on the definition of "sufficiently rooted." Most cases suggest that the conduct in this case related to the checking account and Reserve Line was

---

[5] Plaintiff has stipulated that the court must dismiss many of these claims.

sufficiently rooted to plaintiff's pre-bankruptcy past as to be included as property in the estate.  *See, e.g., In re Ryerson*, 739 F.2d 1423, 1425 (9th Cir. 1984) (holding that an interest in a contract value, which was contingent on the debtor's appointment being terminated, was estate property even though the debtor's appointment had not been terminated at the time of bankruptcy); *In re Richards*, 249 B.R. 859, 861–62 (Bankr. E. D. Mich. 2000) (holding that a claim for asbestos injuries due to previous asbestos exposure was property of estate although the diagnosis and legal ability to sue arose post-petition); *Field v. Transcon. Ins. Co.*, 219 B.R. 115, 119 (E.D. Va. 1998), *aff'd*, 173 F.3d 424 (4th Cir. 1999) (holding that a claim against an insurance company for bad faith refusal to defend was sufficiently rooted, when the accident occurred before bankruptcy but the plaintiff had not made the insurance claim yet).

The court finds it significant that the entire chain of events was documented in plaintiff's monthly checking account statements.  While plaintiff may not have received a statement every month, he received numerous statements before filing bankruptcy that showed the existence of the Reserve Line, its use, and withdrawals from plaintiff's checking account for finance charges and minimum payments on the Reserve Line.  Even if plaintiff thought the Reserve Line was his HELOC, the activity on the account was apparent long before plaintiff filed bankruptcy.  And plaintiff was receiving separate statements for his HELOC at the same time, which were clearly marked "U.S. Bank Home Equity Line" or "EquiLine" at the top of each statement.  Plaintiff chose not to look at his statements or otherwise act on the Reserve Line activity until after his bankruptcy estate was closed.  Because of plaintiff's inactivity, the condition of his accounts and credit escalated, resulting in U.S. Bank making credit reports that may have affected plaintiff's ability to receive additional credit.  All of these events were derivative of conduct that occurred, and was apparent from plaintiff's checking account statements, before bankruptcy.

Under the unique circumstances of this case, the court finds that all of plaintiff's claims touching the checking account and Reserve Line—even those defamation claims that did not fully mature until U.S. Bank actually reported plaintiff's delinquent accounts—are sufficiently rooted in U.S. Bank's initial acts, such that they belong to the trustee of his bankruptcy estate.  Plaintiff lacks standing to pursue any of these claims.

Any claims arising out of the late HELOC payments beginning in October 2002, however, are not sufficiently rooted in pre-petition conduct.  Plaintiff's one-day-late October 2002 payment began a new, separate round of mishaps with plaintiff's HELOC.  While it is somewhat difficult to separate these claims out of plaintiff's case—particularly because the theme of plaintiff's briefs is that U.S. Bank improperly opened and used the Reserve Line—the court finds that plaintiff has standing to bring claims relating to plaintiff's HELOC account beginning in October 2002.  The claims which plaintiff has standing to bring are: (1) Breach 1, failing to acknowledge plaintiff's dispute letters; (2) the portion of Breach 2 about U.S. Bank's post-dispute collection activities on the HELOC account; (3) the portion of Breach 3 regarding withdrawals from the HELOC; (4) the portion of Breach 4 regarding U.S. Bank's reports that the HELOC was past-due; (5) the portion of Breach 5 dealing with U.S. Bank's failure to report that plaintiff disputed the HELOC amounts allegedly past-due; (6) Breach 6, failing to tell plaintiff the name of anyone to whom U.S. Bank reported plaintiff's payment history; (7) Negligence Claim 2, not closing the checking account on February 4, 2003; (8) Negligence Claim 3, failing to mail plaintiff monthly HELOC billing statements after February 4, 2003; (9) Negligence Claim 4, failing to apply all tendered loan payments to the HELOC after February 4, 2003; and (10) defamation claims arising out of comments about plaintiff's late payments on the HELOC.

**B. Remaining Claims**

*1. FCRA Immunity*

The FCRA grants a defendant absolute immunity for certain state law claims that arise after a consumer notifies the defendant that his credit information is inaccurate. *See Millett v. Ford Motor Credit*, No. 04-2450-CM, 2006 WL 1301160, at *4 (D. Kan. May 9, 2006); *Holland v. GMAC Mortgage Corp.*, No. 03-2666-CM, 2006 WL 1133224, at *13 (D. Kan. Apr. 26, 2006); *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1354 (D. Kan. 2006); *Aklagi v. Nationscredit Fin.*, 196 F. Supp. 2d 1186, 1194 (D. Kan. 2002). Defendant is entitled to this immunity for several of plaintiff's state law claims: (1) plaintiff's defamation claims for reporting inaccurate information to credit reporting agencies; and (2) Breaches 4, 5, and 6, which center on U.S. Bank's reports to credit reporting agencies after receiving plaintiff's dispute letters and U.S. Bank's failure to tell plaintiff the name of anyone to whom U.S. Bank reported plaintiff's payment history.

*2. Breach of Contract Claims 1–3*

In his first breach of contract claim, plaintiff claims that U.S. Bank did not acknowledge receipt of plaintiff's 2003 letters within thirty days or provide plaintiff with a written explanation of the charges. Defendant pointed out that plaintiff had a lengthy conversation with Mr. Jass on February 4, 2003 about his checking account, and that U.S. Bank responded in writing to plaintiff's letters on April 1, 2003. Plaintiff failed to respond to defendant's argument. The court finds no basis in the evidence for Breach 1, and grants summary judgment on the claim.

In his second breach of contract claim, plaintiff claims that U.S. Bank breached the HELOC agreement by continuing collection activities on plaintiff's HELOC account after plaintiff disputed amounts owing. Defendant offered evidence showing that plaintiff received only one late-payment notice from U.S. Bank for his HELOC account, which the court finds is not "collection activity."

-12-

All of the "collection activity" of which plaintiff complains was in regard to plaintiff's checking account, not the HELOC.  And again, plaintiff did not respond to defendant's argument.  The court finds no basis in the record for Breach 2, and grants summary judgment on the claim.

In Breach 3, plaintiff claims that U.S. Bank breached the HELOC agreement by withdrawing disputed amounts from his HELOC account without authorization.  The record contains no evidence of unauthorized withdrawals from the HELOC account, and plaintiff's response to U.S. Bank's argument focuses solely on the unauthorized withdrawals from his checking account.  The court grants summary judgment on Breach 3.

### 3.  Negligence Claims 2–4

Plaintiff's negligence claims 2–4 are essentially negligent banking claims.  Plaintiff claims that U.S. Bank did not follow through on two commitments and improperly applied a loan payment. Several courts have held, however, that when damages are purely economic, a bank does not owe a duty of care independent of any contractual obligations it may have.  *See, e.g.*, *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569–70 (6th Cir. 2006); *Micale v. Bank One N.A. (Chicago)*, 382 F. Supp. 2d 1207, 1221–22 (D. Colo. 2005); *Sekerak v. Nat'l City Bank*, 342 F. Supp. 2d 701, 715 (N.D. Ohio 2004); *Abbott v. Chem. Trust*, No. 01-2049-JWL, 2001 WL 492388, at *5 (D. Kan. Apr. 26, 2001). The court finds that plaintiff has failed to identify a tort duty under Kansas law in order to state a negligence cause of action, and such failure is fatal to plaintiff's negligence claims.  *See Thies v. Cooper*, 753 P.2d 1280, 1282 (Kan. 1988) (recognizing that the existence of a duty is a question of law).

### 4.  Defamation Claims for Comments to Lenders

For purposes of this order, the court will assume that plaintiff can show that U.S. Bank made defamatory statements about plaintiff to plaintiff's potential lenders.  Even if words are defamatory,

-13-

however, a communication is qualifiedly privileged if the following conditions are met: "[(1)] good faith, [(2)] an interest to be upheld, [(3)] a statement limited in its scope to the upholding of such interest[,] and [(4)] publication in a proper manner only to proper parties." *Luttrell v. United Tel. Sys., Inc.*, 683 P.2d 1292, 1294 (Kan. Ct. App. 1984).  If a defendant shows that his statements are qualifiedly privileged, then the plaintiff must prove that the defendant recklessly disregarded the truth or knew of the falsity to overcome the privilege.  *Id.*

Here, there is no evidence that U.S. Bank notified other lenders of plaintiff's delinquent HELOC account in bad faith.  The only evidence before the court is that U.S. Bank properly advised others that plaintiff made late payments on his HELOC.  U.S. Bank made its credit information known to others in furtherance of its interest as a lender.  And it only made statements to plaintiff's proposed lenders in response to inquiries by those entities.  The court notes that several Kansas state and federal courts have extended a qualified privilege under similar circumstances.  *See, e.g., Lloyd v. Quorum Health Res., L.L.C.*, 77 P.3d 993, 953 (Kan. Ct. App. 2003) (granting qualified privilege when executive made comments within the scope of his employment and there was no evidence that he knew the statements were false or that he acted with reckless disregard); *El-Ghori v. Grimes*, 23 F. Supp. 2d 1259, 1270 (D. Kan. 1998) (applying qualified privilege to statements about an employee's job performance and qualifications).  Because U.S. Bank has shown that the communications were qualifiedly privileged, plaintiff must show that U.S. Bank made the statements with actual malice, which plaintiff has not done.  Summary judgment is appropriate on plaintiff's defamation claims.[6]

---

[6]  Alternatively, the court notes that to prevail on his defamation claim, plaintiff must show that he suffered damage to his reputation.  *See Gobin v. Globe Publ'g Co.*, 649 P.2d 1239, 1243 (Kan. 1982).  U.S. Bank offered evidence that plaintiff's reputation was not damaged.  Although

(continued...)

**IT IS THEREFORE ORDERED** that U.S. Bank's Motion for Summary Judgment (Doc. 135) is granted.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment on Liability against Defendant U.S. Bank (Doc. 132) is denied as moot.

Dated this 22nd day of December 2006, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**

---

[6] (...continued)
plaintiff did not specifically respond to U.S. Bank's argument, plaintiff stated in response to one of U.S. Bank's proffered uncontroverted facts, "Plaintiff believes it is common knowledge that debt collectors have a reputation generally for belittling their targeted individuals and not thinking much of them." Plaintiff's unsupported statement is insufficient to establish that he suffered damage to his reputation.